POULTRYMEN'S SERVICE CORPORATION, DEBTOR IN POSSESSION UNDER CHAPTER XI OF THE NATIONAL BANKRUPTCY ACT, PLAINTIFF, v. ARTHUR BAER AND JEAN BAER, HIS WIFE, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided September 29, 1960.

164

*Mr. Robert B. Veeder,* attorney for plaintiff.

*Mr. Walter Fox,* attorney for defendant Arthur Baer.

*Mr. Julius Braun,* attorney for defendant Jean Baer.

LARRABEE, J. C. C. (temporarily assigned). Plaintiff Poultrymen's Service Corporation, a retailer of poultry feed and supplies, has instituted suit against the defendants Arthur Baer and Jean Baer, alleged operators of a poultry farm.

Plaintiff sues defendants in six counts. The first count alleges a book account; the second count alleges goods sold and delivered; the third count sues on an account stated. All of these claim $15,606.76 due from the defendants. The

fifth count alleges that the defendants are owners of a 20.4-acre poultry farm and that on February 26, 1960 defendants owed plaintiff $16,111.80 for goods sold and delivered, and on that date in consideration of certain credits and an agreement not then to institute suit, defendants agreed to secure the payment of the account with a mortgage on the farm payable in full in the event of any sale and to be reduced not less than $20 per week; and that the offer was communicated to plaintiff which accepted the same on March 1, 1960, gave the credit referred to, leaving a balance of $15,606.76, and deferred suit.

Plaintiff claims that its position has changed because defendants, who owned a poultry farm to which plaintiff supplied grain and poultry feed, have sold the farm to Louis and Mary Gamberdella; that $17,500 has been held in escrow from the purchase moneys for the purpose of eliminating item 9 re the *lis pendens* filed by plaintiff from the title policy to be issued to the purchasers; and that the said amount is insufficient since plaintiff's claim is $15,639.21 plus $4,381.11 interest, and will not be available at all if the fifth count is dismissed.

Arthur Baer, in affidavit filed, says that a mortgage was discussed, interest was requested and refused, but credits and adjustments were to be given as part of the transaction, and these were never determined.

Plaintiff asks the court to establish an equitable mortgage lien against the premises in the sum of $15,606.76 with costs.

The sixth count claims that defendants owe $382.58 because of their breach of the agreement to give a mortgage in exchange for the credits given in the amount of $382.58.

Defendant Jean Baer moves to strike the fifth count for failure to set forth a cause of action; Arthur Baer moves to strike the fifth and sixth counts for the same reason.

The defendants argue that the purported agreement is one that creates an interest in real estate within the statute of frauds, *R. S.* 25:1–5, and consequently is invalid and not a proper basis for a defense.

. Plaintiff counters with the contention that the situation is taken outside the statute of frauds by the circumstances of the case, that is, part performance and something more than the payment of money. A number of cases cited are the following: *Dean v. Anderson*, 34 *N. J. Eq.* 496 (*Ch.* 1881); *Rutherford Nat. Bank v. H. R. Bogle & Co.*, 114 *N. J. Eq.* 571 (*Ch.* 1933); *Cauco v. Galante*, 6 *N. J.* 128 (1951); *Clark v. Van Cleef*, 75 *N. J. Eq.* 152 (*Ch.* 1908); *Joseph S. Naame Co. v. Louis Satanov Real Estate & Mortg. Corp.*, 103 *N. J. Eq.* 386 (*Ch.* 1928), affirmed 109 *N. J. Eq.* 165 (*E. & A.* 1929); *Bernheimer v. Verdon*, 63 *N. J. Eq.* 312 (*E. & A.* 1901).

These cases in effect hold that where a person has advanced money on the contemporaneous promise of a mortgage to secure the repayment of same, and has changed his position because of the promise to give a mortgage, the court will take the case outside of the statute of frauds to prevent the operation of the statute creating a fraud. This is the conventional situation in which the court has directed that a mortgage be given in spite of the provision of the statute. The problem here is whether or not the facts in the instant case come within the purview of the line of authority creating the exception. Here there is no present payment of $15,606.76. Usually a past consideration is not a legal consideration, *Long v. Board of Chosen Freeholders of Hudson County*, 16 *N. J. Super.* 448 (*App. Div.* 1951), but a past consideration has been held adequate for the giving of a mortgage in equity. *Perkins v. Trinity Realty Co.*, 69 *N. J. Eq.* 723 (*Ch.* 1905), affirmed in 71 *N. J. Eq.* 304 (*E. & A.* 1906).

Looking at the transaction at the time it was consummated, the parties were bargaining for a mortgage on the one hand in exchange for a credit and deferment on the other, so that it may be said that there was a complete present consideration on both sides at the time the transaction was consummated.

However, the cases cited as precedent generally are cases where a substantial sum was advanced with a contemporaneous promise and expectation of receiving a mortgage, commensurate with the sum advanced. The court, in taking the cases outside of the statute, did so because the result would permit not only a fraud but a substantial fraud. The fraud, if any, in this case is not proportionally commensurate with that found in the cases cited as authority.

The case with the greatest factual similarity to the instant case which the court has found is *Sleeth v. Sampson,* 237 *N. Y.* 69, 142 *N. E.* 355, 30 *A. L. R.* 1400 (*Ct. App.* 1923) where Sampson, who owed Sleeth $1,200, asked for the loan of an additional $100, offering a mortgage on the farm as security. Some money was actually handed to Sampson, who handed the deed and abstract of title to Sleeth and said, in part—"we will go down to the lawyers in a few days and draw this up." Sampson died soon thereafter.

The court, by Judge Cardozo, held that the statute made invalid the agreement to give a mortgage. The court applied tests recognized in New York State, *i. e.,* that the part performance must be acts that would be unintelligible or at least extraordinary unless related to a contract to give a mortgage, and held that the delivery of abstracts; and a deed for the purpose of and preliminary to drawing the mortgage, and like acts, are inadequate. But the court said that to hold the contract valid "would open wide the door to the entry of the evils against which the statute is directed. Any one who had made a loan would be free to transmute it into a loan with a lien upon the land. The danger is emphasized in this case where the bulk of the indebtedness was antecedent to the promise."

While the test applied by the New York court regarding the nature of the acts sufficient to constitute part performance are not identical with those applied by the New Jersey courts, the basic situation of an agreement to secure an antecedent debt with a mortgage, with a relatively small

consideration paid for the promise, is characteristic of both cases, and the reasoning of the New York court quoted above applies to both cases.

It may be noted that the delivery of a deed and abstract to Sleeth, considering that Sampson owed him money, coupled with Sampson's statement, was almost extraordinary unless related to a contract to give a mortgage to Sleeth. In refusing to consider these acts as adequate part performance, the court applied the rule which permits the exception strictly in favor of the statute.

Of the New Jersey cases the one which seems to be most closely related to the instant case is *Cauco v. Galante*, 6 *N. J.* 128 (1951). Here Mary Cauco sold her real estate to raise $13,392 to lend to her brother Joseph Galante and his wife Anna, on their promise to give her a mortgage on Anna's real estate. She turned the money over to the Galantes. Joseph died and Anna refused to give the mortgage, but the court directed her to do so. So the case may be said to hold that a change of position plus the payment of the money to be secured induced by the promise to give a mortgage to secure the repayment of the money will avoid the statute.

The *Cauco* case differs from the instant case in that there are no antecedent debts involved. No evaluation of her change of position was made in the *Cauco* case. Mrs. Cauco may have taken no loss in selling her house, and the act was consistent with preparations to make a loan but not so clearly referable to the taking of a mortgage to secure the loan.

The change of position alleged by the plaintiff Poultrymen's Service Corporation is the sale of defendants' farm. This change of position is a stronger factor than that which occurred in the *Cauco* case because it shows a definite prospect of loss through the fact that the escrowed amount is insufficient to pay all of plaintiff's claim plus interest, and also because the change of position is caused by defendants

Baers' acts, whereas in the *Cauco* case the change caused by the plaintiff Mrs. Cauco's acts.

The payment of money, without more, does not constitute such partial performance as to take the case out of the statute of frauds where real estate is involved. *Feldman v. Warshawsky*, 125 *N. J. Eq.* 19 (*E. & A.* 1938). In the instant case the credit of $382.58 is partially comparable to the payment of money, but it is not fully comparable because the overt act of giving the credit is an act done by plaintiff alone, whereas in the payment of money cases defendant actively participates by receiving the money, providing evidence that at least this part of the transaction was consensual. Consequently, plaintiff's giving a credit is weaker, proof-wise, than the payment and receipt of money by both parties.

It may be noted that advancing the general credit upon which the antecedent debt was created was not part of the agreement to give a mortgage. The mortgage was not discussed until after the antecedent debt was created.

After weighing all of the elements in the case the court believes that the principle most properly applicable is that enunciated in Judge Cardozo's quotation, and consequently the fifth count is stricken. The sixth count will survive on the theory that it spells out a *quasi*-contract to prevent unjust enrichment.